Commonwealth *v.* Whiting, Appellant.

206

Argued January 21, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Richard M. Lovenwirth,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, with him *Richard A. Devlin* and *Paul W. Tressler,* Assistant District Attorneys, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1970:

On April 9, 1968, appellant was found guilty by a jury of robbery, aggravated robbery, and assault and battery, all arising out of a purse snatching. Following the denial of post-trial motions he was sentenced to serve from four to twelve years. He thereupon appealed to the Superior Court, which affirmed the judgment of sentence per curiam without opinion. We granted allocatur.

On November 9, 1967 appellant was arrested for the purse snatching in question. Approximately one hour *after* his arrest, the victim was shown eight photographs, one of which was the appellant without eyeglasses. After the victim identified appellant as her assailant, she was then shown another picture of appellant, this time with eyeglasses (her assailant wore eyeglasses). She again identified appellant as her assailant. The next day Detective McNabb of the Lower Merion Police Department telephoned her, requesting that she come to the police station to view a suspect. When she arrived she was shown the appellant behind a one-way mirror being questioned by Detective McNabb, whom the victim knew. Concerning these pretrial confrontations, the victim testified at trial: "Well, I said the photograph looked like the person. The next day, I said that it positively was the suspect I saw." The victim also testified that at the time her purse was snatched, she observed her assailant for approximately three to six seconds.

In *United States v. Wade,* 388 U.S. 218, 229-30, 87 S. Ct. 1926, 1933-34 (1967),[1] the Supreme Court of the United States detailed the reasons for holding that certain pretrial confrontations are critical stages which require that the accused have counsel present: "The pretrial confrontation for purpose of identification may take the form of a lineup . . . or presentation of the suspect alone to the witness, as in Stovall v. Denno, supra [388 U.S. 293, 87 S. Ct. 1967 (1967)]. It is obvious that risks of suggestion attend *either form of confrontation* and increase the dangers inhering in eyewitness identification. But as is the case with secret interrogations, there is serious difficulty in depicting what transpires at lineups *and other forms of identification confrontations.*" (Emphasis added; footnote omitted.)

Additionally, the Court pointed out in *Wade* that counsel was necessary to overcome the "potential for improper influence" inherent in certain pretrial identification procedures: "[T]he vice of suggestion created by the [one-on-one] identification in Stovall, supra, was the presentation to the witness of the suspect alone handcuffed to police officers. It is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed guilty by the police." *Wade,* 388 U.S. at 234, 87 S. Ct. at 1936.

In the instant case there were two pretrial confrontations which occurred after the suspect was in custody: a one-on-one identification through a one-way mirror, and a photographic identification. It is clear that under *Wade,* both confrontations were critical stages requiring counsel. The necessity for counsel at

---

1 Since the pretrial identifications which occurred in the instant case took place after June 12, 1967, the holding in *Wade* is applicable. *Stovall v. Denno,* 388 U.S. 293, 296, 87 S. Ct. 1967, 1969 (1967).

a one-on-one identification was specifically noted in the passages quoted above from *Wade*.[2] Indeed, appellant's inability to depict what transpired at the one-on-one identification is readily apparent in the instant case, for appellant did not even know of the identification until the victim testified at trial. As for the photographic lineup employed in the instant case, the necessity for counsel at that confrontation is implicit in *Wade,* which factually concerned a corporeal lineup. *Wade* cannot be undercut simply by substituting pictures for people, nor can the police prepare a witness for the lineup by privately showing the witness pictures of the accused. As the Third Circuit recently held in *United States v. Zeiler,* 427 F. 2d 1305, 1307 (3d Cir., 1970): "The considerations that led the court in Wade to guarantee the right of counsel at lineups apply equally to photographic identifications conducted after the defendant is in custody. The dangers of suggestion inherent in a corporeal lineup identification are certainly as prevalent in a photographic identification. . . . Also the defendant, himself not being present at such a photographic identification is even less able to reconstruct at trial what took place unless counsel was present. . . . In addition, the constitutional safeguards that Wade guaranteed for lineups may be completely nullified if the police are able

---

[2] Accord: *Commonwealth v. Guillory,* Mass. , 254 N.E. 2d 427 (1970) ; *Rivers v. United States,* 400 F. 2d 935 (5th Cir. 1968) ; see *People v. Fowler,* 1 Cal. 3d 335, 344, 82 Cal. Rptr. 363, 370, 461 P. 2d 643, 650 (1969) ("The high court, in holding [in *Stovall*] that the Wade-Gilbert rules were to have purely prospective application . . . strongly inferred that such rules would have governed the factual situation at bench if they had been given retroactive application . . . ."). See also *Wade,* 388 U.S. at 251, 87 S. Ct. at 1944 (WHITE, HARLAN, and STEWART, JJ., dissenting in part and concurring in part): "The rule [announced by the majority in *Wade*] applies . . . *a fortiori* to a face-to-face encounter between the witness and the suspect alone . . . ."

privately to confront witnesses prior to the lineup with suggestive photographs." (Citations omitted.)[3]

Since appellant's right to counsel at the pretrial identifications was violated, the victim should not have been permitted to make her in-court identification, absent a showing that the identification had an "independent origin." See *Wade*, 388 U.S. at 242, 87 S. Ct. at 1940. The Commonwealth urges, however, that appellant failed to object to the admission of the victim's identification, and hence waived his right to relief on this issue. We cannot agree.

After the victim testified at trial, another witness testified and court was adjourned for the weekend. On Monday, before the trial recommenced, the following transpired: "MR. LOVENWIRTH [Defense Counsel]: Your Honor, the Defendant has requested to see Your Honor at side bar personally where he wishes to make a motion. THE COURT: What kind of motion? MR. LOVENWIRTH: Your Honor, he advises me that he wishes personally to make a motion, not through counsel, but personally make a motion that the Jury be instructed to disregard the identification made by Mrs. Mary Donnelly [the victim] as it is thought that such identification is violent to either the rules of evidence or the rules of due process. I'm not sure just what reason he will give the Court for that purpose. Now it's very possible that my client has good legal grounds. I cannot frankly advise the Court that I am familiar with it, however. THE COURT: Well, you may tell him that we are not going to depart from the usual and customary procedures in this court. He has able and competent counsel and the counsel is certainly competent

---

[3] We note that the record in the instant case indicates that the pictures of appellant shown to the victim may have been police mug shots. There is no indication whether the other photographs were also mug shots.

to voice any objections that the defense may have to any evidence that has been introduced . . . . You can tell him that his request is denied, and we will move along with the next Commonwealth witness. *An exception to the defense.*" (Emphasis added.)

It is quite clear from the above colloquy that appellant has not waived his right to litigate the propriety of the victim's identification. We do require that issues be called to the trial court's attention so that errors may be corrected while the trial is in progress. That requirement, however, was certainly met in the instant case, and the trial judge even noted an objection for appellant. Hence we cannot find a waiver. See, e.g., *Commonwealth ex rel. Fox v. Maroney,* 417 Pa. 308, 313 n.5, 207 A. 2d 810, 813 n.5 (1965) (citing facts of several cases where we have held no waiver).

While appellant must be accorded a new trial, the victim's identification may still be admissible if it had an "independent origin," see supra. We think it only fair, therefore, to give the Commonwealth, if it so desires, a chance to show such origin before the new trial takes place. If the Commonwealth can show such independent origin, the victim may so testify, without, of course, referring to the improper identifications which occurred. *Gilbert v. California,* 388 U.S. 263, 272-73, 87 S. Ct. 1951, 1956-57 (1967). If the Commonwealth cannot show an independent origin, the victim cannot give her in-court identification.[4]

The order of the Superior Court is reversed, the judgment of sentence of the Court of Common Pleas, Criminal Section, of Montgomery County is vacated,

---

[4] In light of our decision that appellant must be given a new trial, we need not pass on appellant's claims that the evidence was insufficient to sustain the verdict, that an improperly obtained confession was admitted at trial, that a motion for a change of venue should have been granted, and that a police officer improperly testified concerning his prior knowledge of appellant.

212

and the case is remanded for further proceeding consistent with this opinion.

Mr. Justice POMEROY concurs in the result.

Mr. Chief Justice BELL and Mr. Justice JONES dissent.