Commonwealth *v.* Jackson, Appellant.

2

Argued September 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

petition for reargument refused May 9, 1974.

Before PAWELEC, J., without a jury.

*John W. Packel,* Assistant Defender, with him *Vincent J. Ziccardi,* Defender, for appellant.

*James Garrett,* Assistant District Attorney, with him *Milton M. Stein* and *James T. Ranney,* Assistant

District Attorneys, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., April 3, 1974:

This is an appeal by Thomas L. Jackson from his conviction, after trial without jury, of the crimes of burglary and attempted burglary. The appellant urges this Court to grant him a new trial on the basis of alleged errors made at the suppression hearing.[1] For the reasons enunciated below we deny appellant's motion on the burglary conviction, but grant it as to the attempted burglary conviction.

The facts of the case, simply stated, are these. Some time between December 24, 1971 and January 2, 1972, a Mr. Alexander Johnson told the police that he had observed the appellant break into a truck parked on Bellvue Street in Philadelphia and remove a tool box. This informant knew the appellant on sight from seeing him in that neighborhood where the informant operated a store. The owner of the auto mechanic's tools also reported that the theft occurred on December 24, 1971. The appellant lived near the scene of the crime and had previously been arrested for burglary. On the basis of this information the magistrate issued a warrant to search the appellant's residence on January 2, 1972.

When the police searched the appellant's room that same day, they failed to discover any tools other than an open-ended wrench of the type that can be found in

---

[1] A substantial part of the appellant's oral argument and brief, prepared under the auspices of the Philadelphia Public Defender's Office, was devoted to a scathing and misconceived personal attack on the competency of the suppression hearing judge. As the Public Defender well knows, this Court is not the proper forum to consider the qualifications of lower court judges, and we wish to state that we find such an attack wholly unwarranted in an argument where the issue is simply whether the hearing judge committed error in his rulings.

most homes. The search of the appellant's dresser drawers which revealed the wrench also led to the discovery of a collection of proof-set coins, packaged in a distinctive manner, and a gold pocket watch, items which the officer knew to be the fruits of a previously reported burglary of the home of a Mr. Prather. Although the officer did not seize the wrench, he did seize the coins and the watch along with some stolen identification cards. This evidence of the gold watch and coins formed the basis for the appellant's conviction at trial in the instant case for the burglary of the residence of a Mr. Carl Prather.

While the appellant was in custody for the Prather burglary, a Mrs. Shirley Jackson chose his picture from an array of fifteen to twenty-five photographs shown to her at the police station as being that of the man she had confronted briefly after he broke in her door on the night of January 5, 1972. Although the record does not indicate, apparently, the charge of burglary of the Prather residence and the charge of attempted burglary of the Jackson residence were consolidated for trial. On Mrs. Jackson's testimony, her photographic identification and evidence that a burglary had occurred that same evening in that same building, the appellant was convicted of the crime of attempted burglary of the Jackson residence.

The appellant first argues that the evidence produced by the search of his premises must be suppressed either because the warrant was fatally defective, or because the search extended to an area where the articles sought could not reasonably be expected to be found. We disagree with both conclusions.

The probable cause section of the search warrant reads as follows: "Above-named subject was seen by Alexander Johnson, 58 N/N Res. 2112 Bellvue Street, breaking into a 67 Ford truck, yellow, Philadelphia license 016843 and removing a tool box from this vehicle

and walk toward 21st and Bellvue Street. Informant knows this male on sight from seeing him in the neighborhood where the informant operates a store. The tools which were taken were reported stolen to the police by Logan Walter, 53 N/N 2118 Bellvue Street who had parked the truck in front of 2111 Bellvue Street. The subject's home is about a block and ½ from where the theft occurred. The subject has prior arrest for burglary."

Although the information concerning the date of the alleged crime and the date of the issuance of the warrant are not included in the probable cause section, they are set forth clearly and specifically on the face of the affidavit supporting the warrant. The affidavit states that the crime of burglary was committed on December 24, 1971 and that the warrant was issued on January 2, 1972.

The purpose of the affidavit in support of a warrant is to enable a magistrate to determine whether probable cause for the commission of a crime exists. The requisite information to be set forth in an affidavit for issuance of a warrant are:

(1)  Name and address of accused,

(2)  Nature of crime,

(3)  Time the crime is alleged to have been committed,

(4)  The type of information, concerning the crime, upon which the affidavit is predicated,

(5)  The time such information was received,

(6)  The date of issuance of the warrant.

All the requisites set forth above, with the exception of Item 5, were met specifically by the affidavit. The dispositive question is whether or not the time the information concerning the crime was received by the affiant, even though not specifically set forth in the affidavit, is sufficiently made out by clear implication. The crime was committed nine days before the issuance of the warrant. The information must necessarily have

been received by the affiant within those nine days. If we suppose that the information was received on the day of the crime, which is the remotest time from the issuance of the warrant, the question to be resolved is whether the warrant issued nine days later is defective because of staleness.

The operative date for determining "staleness" is the date on which the crime is alleged to have occurred. See, generally, *Sgro v. United States*, 287 U.S. 206 (1932), Annot., 100 A.L.R. 2d 525, 68 Am. Jur. 2d Searches and Seizures §70 (1973). In determining whether the lapse in time between the alleged date of the occurrence and the date of the issuance of the warrant is so great that there no longer is probable cause to believe that the items to be seized are on the premises to be searched, the magistrate must examine the facts and circumstances of the particular case before him. *Id.* See also *United States v. Harris*, 403 U.S. 573, 579 at n. 2 (1971); *People v. Superior Court*, 6 Cal. 3d 704, 100 Cal. Rptr. 319, 493 P. 2d 1183 (1972); *Franklin v. State*, 437 S.W. 2d 260 (Tenn. Crim. App. 1968). There is nothing in the affidavit from which the magistrate, who is only obliged to exercise common sense, could determine that the tools were not at the place described in the affidavit. Nine days after the crime is alleged to have been committed, assuming the information was received on the day of the crime (at a later time in the nine-day period the time would of course be shorter), is not too long during which to issue a valid search and seizure warrant. We therefore find no merit to the appellant's contention that the information be considered stale because the warrant omitted the date on which Mr. Johnson reported the incident.

Neither were the police acting unreasonably when they searched the dresser drawers for the stolen tools. The police need not assume that the tools would not be taken from the tool box which admittedly could not fit

in the drawers. The tool box itself was a relatively valueless wooden one, and not in itself significant as a repository of the tools. Once stolen they could be stored in various places, and the likelihood that tools might be found in the drawers is underscored by the fact that the police did indeed find a wrench therein. Generally, a search under a search warrant may extend to all parts of the premises described in the warrant where the items sought may reasonably be expected to be found. See L. Hall et al., Modern Criminal Procedure 261-62 (1969). "[I]n countless cases in which warrants described only the land and the buildings, a search of desks, cabinets, closets and similar items has been permitted." 68 Am. Jur. 2d Searches and Seizures §111 (1973). In failing to seize a rather commonplace wrench, the police did not indicate that they were not in fact searching for the stolen tools. Had the police also discovered a set of ratchet wrenches and other auto mechanics tools, they may well have seized them all.

The appellant next argues that the police did not have sufficient probable cause and exigent circumstances to justify their seizure of the coins without first obtaining a warrant. Needless to say, the mere fact that the coins were in plain view did not, ipso facto, justify their seizure. See, e.g., *Coolidge v. New Hampshire,* 403 U.S. 443 (1971) ; *Niro v. United States,* 388 F. 2d 535 (1st Cir. 1968). See also Annot., 29 L. Ed. 2d 1067, 1074-1078. In the instant case the officer specifically recalled that a coin collection with similar distinguishing features had been reported stolen and thus had probable cause for believing these coins were stolen. Since the coins and the watch were items which are easily moved or disposed of, the exigent circumstance for their warrantless seizure was present. Furthermore, the officer could also properly consider the appellant's reputation in determining probable cause, which added to the likelihood that the coin collection had been

stolen. See, generally, Note, the Role of Reputation in Establishing Probable Cause for Arrest and Search, 1969 Wash. U.L.Q. 339, 340-41 and 352.

The appellant also argues that showing Mrs. Jackson the photographic layout was illegal since, the appellant being in custody at the time, he was entitled to have counsel present. In support of his argument appellant cites *United States v. Zeiler*, 427 F. 2d 1305 (3d Cir. 1970), and *Commonwealth v. Whiting*, 439 Pa. 205, cert. denied, 400 U.S. 919 (1970). *Zeiler* stood for the proposition that *Wade*[2] was applicable to pretrial photographic identifications of a suspect in custody. *Zeiler*, however, has recently been overruled by a nine-judge court in *United States ex rel. Reed v. Anderson*, 461 F. 2d 739 (3d Cir. 1972), and, most recently and conclusively, by the Supreme Court in *United States v. Ash*, 413 U.S. 300, 37 L. Ed. 2d 619, 633 (1973), where the Court stated, "We hold, then, that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." Unfortunately, *Commonwealth v. Whiting*, supra, came down between *Zeiler* and the more recent decisions overruling it.

Since the Pennsylvania Supreme Court was bound by the doctrine of *Commonwealth v. Negri*, 419 Pa. 117 (1965), to follow *Zeiler*, we feel the recent overruling of *Zeiler* has re-opened the question of the propriety of conducting an identification by photographic layout when a suspect in custody has not been given the opportunity of having his counsel present.[3] We conclude

---

[2] *United States v. Wade*, 388 U.S. 218 (1967).

[3] Since the Commonwealth has not argued to the contrary, we need not reach the question of whether the appellant in this case was a suspect within the meaning of constitutional proscriptions. Assuming that the other fifteen to twenty-five persons whose pictures were part of the layout were equally suspect, however, we do

that *United States v. Ash,* supra, stands for the better rule.[4] Thus, so long as the display is available for use by the defense, there is no constitutional requirement that the suspect in custody be afforded the right to have counsel present. Although the following principle was not raised in this appeal, we point out that under the test established in *Simmons v. United States,* 390 U.S. 377, 384 (1968), the testimony of an identification witness is suppressible only when the photographic layout procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

We now turn to the appellant's final argument that the Commonwealth's failure to produce the photographic layout at the suppression hearing upon request by the appellant violated his rights to due process of law. We agree. Implicit in the decisions which have rejected the *Zeiler* decision was the assumption that the photographic display would be reproduced so that the defense would at least be in a position to attack the credibility of the identification witness' testimony, or to have the entire identification testimony suppressed because of the impermissibly suggestive nature of the layout procedure. In the instant case the police made no record of which photographs from a selection of hundreds were shown to Mrs. Jackson. Unable to use the layout itself, the defense was left to reconstruct the procedure from

---

note that requiring the police to suffer the presence of counsel for each suspect would create chaos at the identification. In any event, this scenario adds additional weight to the assertion that an accurate reconstruction of the photographic display is the most orderly and effective way to protect the subsequent defendant from a prejudicially unrepresentative layout procedure.

[4] Indeed, virtually every jurisdiction which has considered the *Zeiler,* decision has rejected it. See, e.g., L. Hall et al., Modern Criminal Procedure 194, n. c (Supp. 1973); *United States v. Ash,* 413 U.S. at 300, 37 L. Ed. 2d at 622, n. 2 (1973).

the vague recollections of a witness not astute in the intricacies of subtle persuasion. Furthermore, since an identification witness examines the photographs to determine which one resembles the culprit rather than to determine how many bear no resemblance, it is obvious that under such circumstances the defense's task would be nearly impossible.

*Simmons*, supra, does not provide a different result under the facts of the instant case. In *Simmons* no request was made for production of the large number of photographs until trial. The Court stated: "The defense surely knew that the photographs had played a role in the identification process. Yet there was no attempt to have the pictures produced prior to trial. . . . Moreover, the strength of the eyewitness' identifications of Simmons renders it highly unlikely that nonproduction of the photographs caused him any prejudice."[5] In the case before us, not only did the defense request the layout prior to trial, but the original confrontation between the witness and the appellant was not conducive to a strong identification. Mrs. Jackson testified that she saw the appellant for only one second immediately after having been awakened by a clamor in the hallway. While the confrontation was face to face, the only source of illumination in the darkened apartment came from a light above and behind the appellant. She also testified that it was only probable that she could have identified the appellant had she not seen his picture.

While we have serious doubts that under these facts the Commonwealth will be able to show by clear and convincing evidence that Mrs. Jackson's in-court identification had an origin wholly independent of the photographic layout,[6] we will remand the case for a new trial so that a hearing on this question may be held.

---

[5] *Simmons v. United States*, 390 U.S. at 388-389.

[6] At the suppression hearing the Commonwealth informed the court that it could not reproduce the photographic display because

The judgment of sentence on the burglary charge in Bill of Indictment No. 291 is affirmed.

The judgment of sentence on the attempted burglary charge in Bill of Indictment No. 292 is vacated and the case remanded for a new trial.

HOFFMAN, J., concurs in the result.

SPAULDING, J., did not participate in the consideration or decision of this case.

---

no record was kept of which pictures were shown to Mrs. Jackson. Thus, the only question which remains for the hearing court is whether there was an independent origin for Mrs. Jackson's identification testimony.

---

CONCURRING OPINION BY JACOBS, J.:

I concur in the result reached by the majority because I believe that the failure of the Commonwealth to produce the photographic layout at the suppression hearing upon request violated appellant's rights to due process of law. However, in my opinion, it was unnecessary to consider whether *Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738, *cert. denied,* 400 U.S. 919 (1970), requiring counsel at a photographic layout after a defendant has been arrested, is still the law of Pennsylvania. In the present case, the appellant was not under arrest for the offense in question when the witness was shown the photographic layout but was in custody for an unrelated burglary investigation. For that reason, I believe that *Commonwealth v. Whiting,* supra, has no application.

---

CONCURRING OPINION BY SPAETH, J.:

I join in Judge CERCONE's opinion so far as it concerns the validity of the search of appellant's room, and also as to the necessity to grant a new trial because of the Commonwealth's failure to reproduce the photographic display. I do not agree, however, that *United*

*States v. Ash,* 413 U.S. 300 (1973), "stands for the better rule." For reasons to be stated, I believe that the requirement once imposed by *Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738, *cert. denied,* 400 U.S. 919 (1970), is the law of Pennsylvania, not, however, by virtue of the Sixth Amendment of the United States Constitution but rather by virtue of Article I, §9, of the Pennsylvania Constitution. I nevertheless reach the same result as does Judge CERCONE because in the present case the photographic display occurred before the prosecution had begun. Accordingly, the right to counsel had not yet attached.

In *United States v. Wade,* 388 U.S. 218 (1967), it was held that the Sixth Amendment guarantee of the assistance of counsel applies to "critical stages" of the prosecution of an accused. "Critical stages" were defined as those where "the presence of his counsel is necessary to preserve the defendant's basic right to fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." *Id.* at 227. The majority in *Wade* found that there is inherent in lineups a potential for improper and suggestive influences that may lead to misidentification. Moreover, challenging an identification is difficult because the witnesses rarely change their minds and trial counsel is handicapped in impeaching a misidentification since he is unable to reconstruct what occurred at the lineup. Thus the majority concluded: "Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution. . . ." *Id.* at 236-37.

In *Commonwealth v. Whiting, supra,* our Supreme Court reviewed the reasoning of *Wade* and concluded that it required the presence of counsel at photographic identification displays. It stated that "Wade cannot be undercut simply by substituting pictures for people . . . ." *Id.* at 209, 266 A. 2d at 740.

Recently, however, the United States Supreme Court declined to extend *Wade* to photographic displays. *United States v. Ash, supra.* It expressly held that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *Id.* at 321. As Judge CERCONE indicates in his opinion, it is clear from *Ash* that *Whiting* will have to be re-examined.

In doing so, it must be acknowledged at the outset that the decision in *Whiting,* as much as the decision in *Wade,* is based on an interpretation of the Sixth Amendment. From this it follows that after *Ash, Whiting* "can no longer be considered to be an accurate statement of federal constitutional law." *Commonwealth v. Claitt,* 454 Pa. 313, 319, 311 A. 2d 922, 925 (1973) (POMEROY, J., concurring). This is so because when the United States Supreme Court states a rule based upon the Constitution of the United States, the statement is binding on us under the Supremacy Clause. *Henry v. City of Rock Hill,* 376 U.S. 776, 777 n.1 (1964). In deciding whether a defendant is entitled to counsel at photographic identification displays, we therefore can no longer rely upon the Sixth Amendment. We may, however, impose such a requirement if we have a non-federal basis for doing so. *Cooper v. California,* 386 U.S. 58, 62 (1967).

There are two provisions of the Pennsylvania Constitution either of which might serve as such a non-federal basis. The first provision is that "[i]n all criminal prosecutions the accused hath a right to be heard

by himself and his counsel." Pa. Const. art. I, §9. While it is true that the wording of this provision is similar to that of the Sixth Amendment, "[o]ur delineation of the state right is not necessarily circumscribed by interpretation [of the Sixth Amendment] . . . ." *Commonwealth v. Ray*, 455 Pa. 43, 49, n.4, 315 A. 2d 634, 636 (1974) (opinion by POMEROY, J., announcing the holding of the Court). The second provision is that an accused may not be "deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." Pa. Const. art. I, §9. "By the 'law of the land', is meant . . . due process of law." *Palairet's Appeal*, 67 Pa. 479, 485 (1871).

In considering whether either of these provisions of the Pennsylvania Constitution should be held to require counsel at a photographic identification display it is helpful to consider the several opinions filed in *United States v. Ash, supra*. The opinion for the Court was filed by Mr. Justice BLACKMUN, expressing the view of five justices. Mr. Justice STEWART filed a concurring opinion. Mr. Justice BRENNAN, joined by Mr. Justice DOUGLAS and Mr. Justice MARSHALL, filed a dissenting opinion. The only issue was whether the Sixth Amendment guaranteed the defendant the right to counsel at a post-indictment photographic identification display; the defendant had argued in the Court of Appeals that he had such a right as a matter of due process but as the Court of Appeals had found the record insufficient to permit decision of that issue, it was not considered on appeal to the Supreme Court.

Each of the opinions took as its point of departure the premise that the Sixth Amendment guarantees the defendant the right to counsel at all "critical stages" of the prosecution. They differed, however, in defining "critical stages."

Mr. Justice BLACKMUN in his opinion for the Court approached the problem of defining "critical stages"

from an historical perspective. Noting that initially the Sixth Amendment's guarantee of counsel extended only to the trial, he concluded from the cases that it had evolved only so far as to include such other proceedings during the criminal prosecution as were characterized by "a trial-like confrontation." *United States v. Ash, supra* at 314. A corporeal lineup, like that involved in *Wade,* was found to be such a confrontation, whereas a photographic identification display was found not to be such a confrontation.

Mr. Justice STEWART and Mr. Justice BRENNAN each approached the problem of identifying "critical stages" in terms that emphasized the role of counsel; they saw the right to counsel as extending to every stage of the prosecution where the presence of counsel is necessary to ensure that the trial is fair; if counsel is necessary, the stage is "critical." The two justices differed, however, in their appraisal of the necessity of counsel's presence at a photographic identification display.

After stating that "[p]retrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.' Schneckloth v. Bustomonte, 412 U.S. 218, 239; cf. Coleman v. Alabama, 399 U.S. 1, 27-28 (STEWART, J., dissenting)." *United States v. Ash, supra* at 322, Mr. Justice STEWART concluded that a photographic display is not a "critical stage": "It is true that the defendant's photograph may be markedly different from the others displayed, but this unfairness can be demonstrated at trial from an actual comparison of the photographs used or from the witness' description of the display. Similarly, it is possible that the photographs could be arranged in a suggestive manner or that by comment or gesture the prosecuting authorities might single out the defendant's picture. But these are the kinds of overt influence that a witness can easily reconstruct and that would serve to impeach the identification testimony. In short, there

are few possibilities for unfair suggestiveness and those rather blatant and easily reconstructed. Accordingly, an accused would not be foreclosed from an effective cross-examination of an identification witness simply because his counsel was not present at the display. For this reason, a photographic display cannot fairly be considered a 'critical stage' of the prosecution." *Id.* at 324-25.

Mr. Justice BRENNAN differed with this appraisal. First of all he noted that photographic identifications have been found to be less accurate than corporeal identifications because of the limitations of photography. *Id.* at 332. He continued: "For although retention of the photographs may mitigate the dangers of misidentification due to the suggestiveness of the photographs themselves, it cannot in any sense reveal to defense counsel the more subtle, and therefore more dangerous, suggestiveness that might derive from the manner in which the photographs were displayed or any accompanying comments or gestures. Moreover, accused cannot rely upon the witnesses themselves to expose these latter sources of suggestion, for the witnesses are not 'apt to be alert for conditions prejudicial to the suspect. . . .' [*United States v. Wade, supra*] at 230." *Id.* at 335.

Noting that "the accused himself is not even present at the photographic identification, thereby reducing the likelihood that irregularities in the procedure will ever come to light," *id.* at 336, he concluded: "Thus, the difficulties of reconstructing at trial an uncounseled photographic display are at least equal to, and possibly greater than, those involved in reconstructing an uncounseled lineup. And as the Government argued in Wade, in terms of the need for counsel, '[t]here is no meaningful difference between a witness' pretrial identification from photographs and a similar identification made at a lineup.' For in both situations, 'the accused's

inability effectively to reconstruct at trial any unfairness that occurred at the [pretrial identification] may deprive him of his only opportunity meaningfully to attack the credibility of the witness' courtroom identification.' United States v. Wade, supra, at 231-232. As a result, both photographic and corporeal identifications create grave dangers that an innocent defendant might be convicted simply because of his inability to expose a tainted identification." *Id.* at 336-338.

I add only one further consideration. The role of counsel at a corporeal lineup is not a passive one. By pointing out anything that could be suggestive and improper, counsel can avert prejudice to his client. Many trial judges have presided over cases in which the testimony disclosed that in response to counsel's objection the police modified the initial lineup at the station house so that, for example, the persons in the lineup were more nearly all the same height or were dressed in similar clothing. Counsel can play such a role at photographic identification displays, and his presence to do so is at least as necessary at a photographic display as at a corporeal lineup.

In considering the several opinions in *Ash*, I have been persuaded by Mr. Justice BRENNAN'S. In my judgment his opinion catches the reality of the problems that confront counsel at trial to an extent that the other opinions do not. I have therefore concluded that the right to counsel in all criminal prosecutions guaranteed by Article I, §9, of the Pennsylvania Constitution should be held to include the right to have counsel present at a post-indictment photographic identification display.*

---

* I therefore do not reach the question whether that right is guaranteed by the due process clause of Article I, §9.