456 A.2d 622

**COMMONWEALTH of Pennsylvania**

v.

**Alphonzo F. ZABALA, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 15, 1981.

Filed Feb. 11, 1983.

Petition for Allowance of Appeal Denied June 2, 1983.

302

Abraham A. Hobson, III, Norristown, for appellant.

Robert P. Brendza, Assistant District Attorney, for Commonwealth, appellee.

Before WICKERSHAM, BECK and POPOVICH, JJ.

BECK, Judge:

Appellant Alphonzo F. Zabala appeals from the judgment of sentence entered by the Court of Common Pleas of Chester County after a jury convicted Appellant of robbery, burglary, theft by unlawful taking or disposition, terroristic threats, recklessly endangering another person, simple assault, receiving stolen goods, and conspiracy. We affirm.

On January 27, 1977, a burglary and robbery occurred at the Chester County home of Dr. Caeser Sarni while Dr. Sarni's housekeeper was in the home. Although the housekeeper was prevented from summoning assistance during the commission of the crime, she contacted the police shortly after the crimes had been completed and described one of the three perpetrators.

Two days later in Chester County the housekeeper [hereinafter "the witness"] worked with police artists to produce a composite sketch of the individual she had previously described. On February 4, 1977, the witness identified a

picture of Appellant's brother, Vincent Zabala, from a display of fourteen photographs which did not include a picture of Appellant.

Subsequently, in March of 1977, Montgomery County police officers armed with a warrant searched the shop space (coin shop) which Appellant rented in a Montgomery County building. In the building's boiler room the officers found an unsecured cloth bag inside which were burglary tools and several notebooks. One of the notebooks contained the address of Dr. Caesar Sarni.

On July 15, 1977, under the direction of Chester County police and the Federal Bureau of Investigation [1] a display of six photographs which included a picture of Appellant but did not include a picture of Appellant's brother Vincent, was shown to the witness at which time the witness identified Appellant's photograph.

In August of 1977 a Montgomery County judge ruled that the warrant authorizing the March search of Appellant's Montgomery County coin shop was invalid. Consequently, the evidence seized pursuant to the warrant was suppressed in the Montgomery County proceedings against Appellant.

On September 23, 1977, Appellant was charged in Chester County with multiple offenses stemming from the January 27, 1977, entry into Dr. Sarni's residence.[2] On March 14, 1978, a mistrial was declared because the jury could not agree upon a verdict, and a new trial was ordered.

As a result of continuances requested by Appellant [3] and extensions requested by the Commonwealth, Appellant's second trial did not commence until October 27, 1980.

1. Following a jury trial begun on November 7, 1977, Appellant was acquitted in the United States District Court for the Eastern District of Pennsylvania of a charged violation of 18 U.S.C.App. § 1202(a)(1) [former felon not to possess firearm] arising from the Sarni incident.

2. Appellant was arrested in Chester County on December 1, 1977.

3. Both Appellant and the Commonwealth requested, and were granted, multiple continuances and extensions throughout the course of this case. On several occasions the periods of the continuances and extensions overlapped.

In conjunction with his new trial Appellant filed a motion to dismiss the charges against him, alleging that his second trial commenced after the time period specified in Pa.R. Crim.P. 1100(e). Additionally, Appellant filed a motion to suppress not only the evidence seized in Montgomery County during the March, 1977, search of the building in which Appellant rented space (coin shop) but also the witness's in-court identification of Appellant. Finally, Appellant asked the Chester County court not to permit the introduction of evidence relating to Appellant's prior convictions for crimes involving dishonesty, which evidence the Commonwealth sought to utilize to impeach Appellant's credibility.

All of Appellant's motions were denied, and on October 30, 1980, a jury found Appellant guilty of robbery, burglary, theft by unlawful taking or disposition, terroristic threats, recklessly endangering another person, simple assault, receiving stolen goods, and conspiracy.

Appellant's post-trial motions in arrest of judgment and for a new trial were denied, and after a hearing Appellant was sentenced in accordance with the Sentencing Code, 42 Pa.C.S. § 9701 et seq., and the doctrine of merger; *Commonwealth v. Eberts*, 282 Pa.Super.Ct. 354, 422 A.2d 1154 (1980); *Commonwealth v. Crocker*, 280 Pa.Super.Ct. 470, 421 A.2d 818 (1980). Thereafter, Appellant filed a direct appeal from the judgment of sentence.

■ Initially, Appellant contends on appeal that his motion to dismiss should have been granted because his new trial did not begin within the 120-day period mandated by Pa.R.Crim.P. 1100(e).

Due to a "hung" jury Appellant's first trial was terminated by a declaration of mistrial on March 14, 1978, at which time a new trial was ordered. Pursuant to Rule 1100(e) the run date for Appellant's new trial was July 12, 1978, *i.e.*, 120 days from the date on which the new trial was ordered. Although several lengthy continuances and extensions delayed the start of Appellant's trial until October 27, 1980, Appellant's argument on appeal concerns only the period

between March 14, 1978, and February 20, 1979, during which Appellant was not brought to trial.

On March 22, 1978, the Commonwealth filed an application to extend the commencement of trial. A rule to show cause why the Commonwealth's application should not be granted was entered against Appellant and made returnable on April 3, 1978. A hearing on the application was scheduled for July 12, 1978.

Meanwhile, Appellant executed a written waiver of his Rule 1100 rights from July 3, 1978, to October 14, 1978, and was granted a continuance to the October, 1978, trial term.

On July 12, 1978, the Commonwealth's application to extend was granted, and the time frame within which the Commonwealth could try Appellant was expanded to October 17, 1978.

Having learned that his case was listed for October 10, 1978, Appellant appeared in court on September 22, 1978, to request an additional continuance until the November, 1978, trial term. Appellant waived Rule 1100 until November 13, 1978, and was granted a continuance coextensive with the length of his waiver.

On October 16, 1978, the Commonwealth filed an application to extend the start of Appellant's trial. A rule to show cause why the Commonwealth's application should not be granted was entered against Appellant, and a hearing on the application was scheduled for January 17, 1979.

On November 6, 1978, Appellant's trial attorney filed a petition to withdraw as Appellant's counsel, and a rule to show cause was entered against the Commonwealth. A hearing on the petition was conducted on November 13, 1978, at which time counsel was permitted to withdraw.

On November 14, 1978, Appellant executed a written waiver of Rule 1100 until the conclusion of the December, 1978, criminal trial term. The waiver stated that Appellant's Rule 1100 rights had been explained to him by his former counsel and were also explained to him in open court

on November 14, 1978, by the assistant district attorney and the trial judge.

On November 27, 1978, through his new counsel Appellant filed an application for a continuance until March 31, 1979, and concomitantly executed a written waiver of Rule 1100 until March 31, 1979. At a hearing on December 4, 1978, in the presence of Appellant and counsel for the Commonwealth, Appellant's new counsel requested, and received, a continuance through the February 1979 trial term. The court asked Appellant if his new counsel had explained Appellant's Rule 1100 rights, and Appellant replied that his rights had been explicated and that he was waiving Rule 1100 through the February 1979 trial term. Judge Stively entered an order directing that the "matter be continued, [Appellant] having waived Rule 1100 for the period of time required to relist this matter for trial."

Subsequently, the case appeared on the January 8, 1979, trial list. Both counsel for Appellant and counsel for the Commonwealth were present in the courtroom before Judge Pitt when the case was called on January 8. Appellant's counsel indicated his readiness to proceed to trial. However, counsel for the Commonwealth stated that the Commonwealth was not prepared to begin its presentation since its witnesses were not present. Asked by Judge Pitt to explain the witnesses' absence, counsel for the Commonwealth responded that he and counsel for Appellant had agreed orally before Judge Stively to a waiver of Rule 1100 until the end of the February, 1979, trial term. Appellant's counsel concurred with the prosecutor's response, adding, "It was an oral waiver by Judge Stively. It is a valid waiver ...."[4] Accordingly, Judge Pitt deemed the case continued until the February trial term.

On February 20, 1979, the case was again called to trial before Judge Pitt. The Commonwealth reiterated its position that Appellant had waived Rule 1100 through the

4. The colloquy on the record establishes that Appellant's waiver was both informed and voluntary and was therefore valid. *Commonwealth v. Krasner,* 285 Pa.Super.Ct. 389, 427 A.2d 1169 (1981).

February trial term, but nevertheless the Commonwealth requested an extension until February 24, 1979.[5] Counsel for Appellant acceded to the Commonwealth's request for an extension, stating that "February 24 . . . is satisfactory to the defense." Thus, Judge Pitt relisted the case for February 24, 1979, having found a waiver of Rule 1100 by Appellant and a timely application for extension by the Commonwealth, which application was duly supported by a showing that the Commonwealth had exercised due diligence in attempting to bring Appellant to trial.

Appellant concedes that under Rule 1100(d)(2)–(3) the interim from July 3, 1978, to January 8, 1979, is excludable from a determination of the trial date as a consequence of Appellant's express waivers of Rule 1100 and the granting of continuances requested by Appellant. However, Appellant asserts that 110 days elapsed from March 14, 1978, until July 3, 1978, and that an additional 41 days elapsed from January 8, 1979, until February 20, 1979, *i.e.*, that a span of 151 days occurred during which the Commonwealth did not seek an extension and Appellant neither waived Rule 1100 nor applied for a continuance. Based upon this computation Appellant maintains that the Commonwealth exceeded the 120-day period of Rule 1100(e) and that the charges against him must therefore be dismissed.

In calculating a total of 151 days, Appellant argues that despite having orally agreed before Judge Stively on December 4, 1978, to waive Rule 1100 until the end of the February, 1979, trial term, he effectively revoked his waiver

5. Additionally, on February 20, 1979, Appellant sought reconsideration of the trial court's refusal to suppress evidence in Appellant's original Chester County trial and moved for dismissal of the charges against him, claiming that his trial in Chester County was barred by a prior federal prosecution arising from the same incident. See note 1, *supra.* After reviewing the notes of the suppression hearing that preceded the original trial, Judge Pitt affirmed the denial of Appellant's motion to suppress. Moreover, after hearing testimony from Appellant and brief arguments by counsel for Appellant and the Commonwealth, Judge Pitt also denied Appellant's motion for dismissal on the grounds of double jeopardy.

on January 8, 1979, when his counsel appeared at the call of his case and announced his readiness to proceed to trial.

> Repeatedly it has been held that
>> 'Rule 1100, like the right to a speedy trial which it protects, may be waived.' *Commonwealth v. Myrick,* 468 Pa. 155, 159, 360 A.2d 598, 600 (1976). There are no formal requirements for a valid waiver of Rule 1100; '[s]o long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity.' *Id.,* 468 Pa. at 160, 360 A.2d at 600.

*Commonwealth v. Brown,* 497 Pa. 7, 11, 438 A.2d 592, 594 (1981); *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980).

In this instance the colloquy at the December 4, 1978, hearing, the statements of Appellant's counsel at the January 8, 1979, call of the case and the written waiver of Rule 1100 executed by Appellant on November 27, 1978, in conjunction with his application for a continuance evidence that on December 4, 1978, Appellant validly waived Rule 1100 until the close of the February, 1979, trial term. "[S]ince [Appellant's] waiver of his Rule 1100 rights was valid, it could not ... be revoked ...." *Evans,* 489 Pa. at 90, 413 A.2d at 1027 (footnote deleted). Thus, the trial court properly denied Appellant's motion to dismiss the charges against him.

 Next, Appellant contends that the Chester County trial court should have granted his motion to suppress [6] evidence seized from the boiler room of the Montgomery County building in which Appellant rented space (coin shop).

---

6. In suppression cases our scope of review where the Commonwealth has prevailed below consists of determining

 > whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

 *Commonwealth v. Hunt,* 280 Pa.Super.Ct. 205, 207–08, 421 A.2d 684, 685 (1980).

Appellant states that his contention is buttressed by the ruling of a judge of the Court of Common Pleas of Montgomery County which held invalid the warrant pursuant to which Montgomery County police searched Appellant's shop and the boiler room of the building in which the shop was located.

At the Chester County trial the Commonwealth did not introduce evidence derived from a search of Appellant's shop, but rather, presented evidence found in the boiler room of the building in which Appellant's shop was situated. Therefore, our inquiry concerns whether, with respect to the unsecured cloth bag left in the building's boiler room, Appellant had a legitimate expectation of privacy which would invoke the protection of the fourth amendment. *Commonwealth v. Freeman,* 295 Pa.Super.Ct. 467, 441 A.2d 1327 (1982).

This inquiry ... embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,' ...— whether, in the words of the *Katz* [*v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)] majority, the individual has shown that 'he seeks to preserve [something] as private ....' The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable"' ...—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances.

... 'Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society ....' Thus, the Supreme Court has considered whether the individual claiming the protection of the fourth amendment took ordinary precautions to insure his privacy ... and has examined the manner in which an individual has used a particular location ....

*Commonwealth v. Sell,* 288 Pa.Super.Ct. 371, 378–79, 432 A.2d 206, 210 (1981) (citations omitted) (footnote deleted), *allocatur granted,* October 9, 1981.

In the case at bar the cloth bag found in the boiler room was not locked or secured in any manner and accordingly lacked any indication that Appellant intended its contents to be private. *See, e.g., United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Commonwealth v. Gabrielle,* 269 Pa.Super.Ct. 338, 409 A.2d 1173 (1979), where a legitimate expectation of privacy existed because items were stored in secured lockers. Furthermore, Appellant had not otherwise appropriated the boiler room to his own use. The boiler room served offices in the building other than Appellant's shop and was not only unlocked but was also accessible from a foyer used in common by the occupants of the four first-floor offices among which was Appellant's shop. Thus, Appellant did not enjoy a legitimate expectation of privacy in regard to the unsecured cloth bag found in the boiler room.

Because the fourth amendment guarantees do not extend to the items inside the unsecured bag left in the boiler room, the alleged invalidity of the warrant pursuant to which Montgomery County police conducted their search of Appellant's shop and the building's boiler room is immaterial to the admissibility of the evidence seized in the boiler room. Consequently, the trial court correctly denied Appellant's motion to suppress the evidence seized in the boiler room, *i.e.,* the unsecured cloth bag containing notebooks and burglary tools.

Additionally, Appellant asserts that the trial court should have suppressed his in-court identification by the Commonwealth's witness because his arrest stemmed from (1) an illegal search and seizure and (2) an uncounseled photographic display.

Having already determined that the police search of the boiler room and accompanying seizure of the cloth bag were not within the ambit of protection afforded by the fourth amendment, we deem moot Appellant's assertion

that his arrest was the fruit of an unlawful search and seizure.[7]

We now consider whether Appellant's arrest resulted from an out-of-court photographic identification [8] which was illegal either because it was uncounseled or because it was suggestive.

■ Pennsylvania courts have long held that an accused's right to counsel is triggered by the accused's arrest.[9] *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *Commonwealth v. Richman*, 458 Pa. 167, 320 A.2d 351 (1974); *Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224 (1973); *Commonwealth v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970), *cert. denied*, 400 U.S. 919, 91 S.Ct. 173, 27 L.Ed.2d 159 (1970); *Commonwealth v. Liverpool*, 294 Pa. Super.Ct. 133, 136 n. 6, 439 A.2d 786, 787 n. 6 (1982); *Commonwealth v. Riley*, 284 Pa.Super.Ct. 280, 290 n. 7, 425 A.2d 813, 818 n. 7 (1981); *Commonwealth v. Mallon*, 279 Pa.Super.Ct. 350, 421 A.2d 234 (1980); *Commonwealth v. Knox*, 273 Pa.Super.Ct. 563, 417 A.2d 1192 (1980). For

7. In the interests of completeness and clarity we note that had we found Appellant's arrest to be illegally based upon an improper search and seizure, the witness's in-court identification of Appellant would not be automatically suppressed. The in-court identification would be admissible if its source were independent of the prior illegality. *Commonwealth v. Townsend*, 280 Pa.Super.Ct. 155, 421 A.2d 452 (1980).

8. At the time of the first photographic identification, *i.e.*, February 4, 1977, Appellant's photograph was not shown to the Commonwealth's witness. Consequently, Appellant disputes the legality of only the July 15, 1977, (second) photographic identification.

9. The test for the occurrence of an arrest has often been defined as the happening of any act that indicates an intention to take the individual into custody and subjects him to the actual control and will of the person making the arrest .... An arrest may thus be effectuated without the actual use of force and without a formal statement of arrest.
*Commonwealth v. Benson*, 280 Pa.Super.Ct. 20, 27, 421 A.2d 383, 386 (1980), *allocatur denied*, December 10, 1980. "The test is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized." *Commonwealth v. Haggerty*, 495 Pa. 612, 615, 435 A.2d 174, 175 (1981).

example, in *Whiting* the Pennsylvania Supreme Court declared that an accused had the right to counsel at a post-arrest photographic identification because such a post-arrest identification constituted a "critical stage" in the criminal proceedings against the accused. Following *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the Pennsylvania Supreme Court explained in *Richman* that the United States Supreme Court applied

> the Sixth Amendment right to counsel ... only to lineups conducted 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment.' 406 U.S. at 689 [92 S.Ct. at 1882].

> *Kirby* does not establish an all inclusive rule; rather, the line to be drawn depends upon the procedure employed by each state. We are therefore faced with the issue of whether this lineup preceded the 'initiation of adversary judicial proceedings' as defined in Pennsylvania .... [W]e hold that *Commonwealth v. Whiting* ... appropriately draws the line for determining the initiation of judicial proceedings in Pennsylvania at the arrest.

*Id.* 458 Pa. at 171, 320 A.2d at 353; *accord, Scott* 469 Pa. at 270 n. 9, 365 A.2d at 146 n. 9; *Commonwealth v. Garland*, 234 Pa.Super.Ct. 241, 243 n. 1, 339 A.2d 109, 110 n. 1 (1975); *Commonwealth v. Tate*, 229 Pa.Super.Ct. 202, 207 n. 1, 323 A.2d 188, 191 n. 1 (1974) (Hoffman, J., dissenting) (All three cases note that the Pennsylvania Supreme Court has not yet departed from the views expressed in *Whiting* despite the United States Supreme Court's decision in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)).

■ Since at the time of the July 15, 1977, photographic identification Appellant was not under arrest in Chester County for the crimes relating to the entry of Dr. Sarni's residence (Appellant was not arrested in Chester County for said crimes until December 1, 1977), Appellant could not assert a right to counsel's presence at the photographic display. Therefore, the out-of-court photographic identification of Appellant was not unlawful because counsel for Appellant did not witness the identification.

■ Alternatively, Appellant argues that the out-of-court photographic identification should be deemed invalid because it was " 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' " *Commonwealth v. Griffin*, 271 Pa.Super.Ct. 228, 233–34, 412 A.2d 897, 900 (1979) (citation omitted), *allocatur denied*, April 1, 1980.

"When the accused challenges an identification, it is the Commonwealth's burden to prove that the identification procedure was not unduly suggestive." *Commonwealth v. Lee*, 262 Pa.Super.Ct. 280, 286, 396 A.2d 755, 757 (1978), *allocatur denied*, May 16, 1979. At the suppression hearing in this matter the Commonwealth's witness, a special agent for the Federal Bureau of Investigation, and a Chester County police officer testified that they were present at the July 15, 1977, photographic display. All three testifiers stated that (1) the photographic display consisted of six black and white photographs of white males in their late twenties and thirties and (2) the photographs were arranged in two rows of three pictures each and placed on a table for viewing by the Commonwealth's witness. Each of the pictures was identified only by a number assigned sequentially so that the display could be accurately preserved. At the suppression hearing the Commonwealth offered the display into evidence as an exhibit, thereby affording counsel for Appellant an opportunity to observe the array and cross-examine regarding it. *Commonwealth v. Brown*, 302 Pa.Super.Ct. 80, 448 A.2d 535 (1982). Furthermore, all three testifiers maintained that the Commonwealth's witness was not influenced to identify any of the photographs in the display but was merely asked to view the display to ascertain whether she could recognize any of the persons pictured.[10]

Nevertheless, Appellant contends that the July 15, 1977, display was suggestive in that although the Common-

10. For example, the FBI special agent testified that he "advised [the Commonwealth's witness] that there was a possibility that someone who was involved in the [Sarni incident] ... possibly could be there

wealth's witness had identified a picture of Appellant's brother at the February 4, 1977, photographic display which did not contain a picture of Appellant, at the July 15, 1977, display a picture of Appellant's brother was not included, and the Commonwealth's witness identified Appellant's picture which did appear in the second display.

While the witness's having identified both Appellant and Appellant's brother as her attacker may affect the weight and credibility accorded by the jury to her testimony, *Commonwealth v. Boone*, 287 Pa.Super.Ct. 1, 429 A.2d 689 (1981), it does not render the July 15, 1977, display suggestive. *See, e.g., Commonwealth v. Lavelle*, 277 Pa. Super.Ct. 518, 419 A.2d 1269 (1980). Although Appellant does have a right not to have his picture differ markedly from other pictures presented in a photographic display, *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976) (In a thirteen-picture display eleven pictures, excluding the accused's, were mug shots. In an eleven-picture display only the accused was shown in a polaroid snapshot.); *Commonwealth v. Henderson*, 497 Pa. 23, 438 A.2d 951 (1981) (similarity of physical features), there are no cases according Appellant the right to choose the persons whose photographs appear in the display. *Commonwealth v. Perkins*, 485 Pa. 286, 401 A.2d 1320 (1979) (affirmance resulting from equally divided court; court unanimous regarding no right to choose photographs for array) (no right to have possible accomplices' pictures in display). Here, the testimony at the suppression hearing indicated that all six photographs were black and white photographs depicting similarly-featured white males of approximately the same age. There was no evidence that the photographs did not comport with either the composite sketch supplied by the Commonwealth's witness two days after the crime or the description that the witness provided to the police immediately after the crime. Thus, in these respects, the out-of-court photographic identification was not suggestive and was properly held admissible by the suppression hearing

[*i.e.,* in the photographic display], and quite possibly they were not. I just told her to look at the pictures ...." (N.T. at 109–10.)

judge. *Commonwealth v. Hall,* 456 Pa. 243, 317 A.2d 891 (1974); *Griffin.*

■ Assuming arguendo, however, without deciding, that the witness's having seen the photograph of Appellant's brother in February might have unduly influenced her identification of Appellant in July, *Fowler* (repetitive display of the accused's photograph between May and August, rather than the witness's remembrance of perpetrator at actual occurrence of the crime, may have caused witness's recognition and identification of accused's photograph), we proceed to consider whether the witness's in-court identification of Appellant had a basis independent of the out-of-court photographic identification. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *Commonwealth v. Keaton,* 276 Pa.Super.Ct. 518, 419 A.2d 578 (1980).

> Subsequent to an illegal arrest or a suggestive out-of-court identification, an in-court identification is admissible if, considering the totality of the circumstances, it is determined that the in-court identification had an independent origin sufficiently distinguishable from the impermissible pre-trial encounter so as to be purged of any taint of that initial illegality .... Such an independent basis need not be established by the Commonwealth beyond a reasonable doubt, but only by the existence of clear and convincing evidence.

*Commonwealth v. Davis,* 264 Pa.Super.Ct. 505, 509, 400 A.2d 199, 201 (1979); *Commonwealth v. Smith,* 290 Pa.Super.Ct. 33, 434 A.2d 115 (1981).

> '[T]he suggestiveness of a courtroom identification is only one factor to be considered in determining the reliability of the identification ....' A victim's in-court identification of an accused is admissible into evidence if there are sufficient guarantees that the identification resulted from the victim's memory of the actual attack by the assailant, rather than the victim's memory of seeing the accused at an illegal show-up, lineup, [photographic identification] etc.

> The factors to be considered in determining whether the in-court identification testimony was purged of any

primary illegality are: (1) the prior opportunity [of the victim] to observe the criminal act; (2) any discrepancy between any pre-confrontation description and [the accused's] actual appearance; (3) any identification of anyone other than [the accused]; (4) any failure to identify [the accused]; (5) the lapse of time between the criminal act and the confrontation; (6) [the victim's] degree of attention; and (7) the degree of certainty in identifying [the accused].

*Commonwealth v. W.P.*, 302 Pa.Super.Ct. 66, 70, 448 A.2d 97, 99 (1982) (citations omitted).

The unlawful entry into the Sarni residence occurred at 11:00 in the morning when a man (hereinafter referred to as Appellant) came to the door of the Sarni residence and asked the Commonwealth's witness for directions. The witness spoke at the door with Appellant for the length of time necessary to provide appropriate directions. The witness testified that she was standing approximately four feet from Appellant while she was speaking with him and that their conversation lasted a few seconds to a few minutes. Appellant then took a gun from his pocket and forced his way through the doorway and into the entrance hallway of the Sarni home which led to the kitchen. The witness asserted that the hall light provided additional opportunity for her to observe Appellant as he backed her along the twelve-foot hallway to the kitchen. Furthermore, the witness stated that from the moment she spoke with Appellant at the door until she and Appellant reached the kitchen, she and Appellant were facing each other.

In the police interview conducted on January 27, 1977, immediately after the crime, the witness noted the following distinguishing features of her attacker: dirty blond hair partially covered by a ski cap; white male in late twenties or thirties; 5'8"; stocky; white parka; square-shaped, metal frame eyeglasses. The witness repeated this description at the suppression hearing and stated that she could identify Appellant based solely on her recollection of seeing him at the time of the crime. Moreover, the witness's recollec-

tion of Appellant was used by the police on January 29, 1977, to create a composite sketch which guided the selection of pictures for the subsequent photographic displays.

Although the witness identified a picture of Appellant's brother at the February 4, 1977, photographic display, this misidentification does not detract significantly from the witness's identification of Appellant on July 15, 1977. In identifying Appellant's brother the witness stated that if the pictured man were wearing eyeglasses, he would look like her attacker. Although the record does not reveal the extent to which Appellant resembles his brother, the record does establish that Appellant wears eyeglasses. Finally, the witness stated that after her July 15, 1977, identification of Appellant she had compared pictures of Appellant and Appellant's brother and was certain tht Appellant was her assailant.

Thus, the witness's in-court identification was based on her memory of the crime itself and was sufficiently independent of any possibly suggestive, intervening, out-of-court photographic identification so as to be admissible into evidence as the hearing judge ruled.

Finally, Appellant argues that his case was prejudiced by the trial court's refusal to prevent the Commonwealth's introduction of Appellant's prior convictions for the purpose of impeaching Appellant's credibility.

Since evidence of prior convictions may unduly influence a jury's decision in a pending case by suggesting an accused's propensity for crime, such evidence is admissible only where the Commonwealth proves that its need for such evidence outweighs the potential prejudicial effect of the evidence. *Commonwealth v. Williams*, 273 Pa.Super.Ct. 389, 417 A.2d 704 (1980).

In *Commonwealth v. Roots*, 482 Pa. 33, 39–40, 393 A.2d 364, 367 (1978), the Pennsylvania Supreme Court enumerated various factors to be evaluated by the trial court in determining the admissibility of prior conviction evidence:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness;

2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Henderson; Williams.* These criteria will be discussed seriatim in relation to Appellant's case.

The Commonwealth sought to offer into evidence Appellant's 1980 Pennsylvania convictions for theft and forgery. Thus, as in *Henderson* the Commonwealth adduced evidence of two *crimen falsi* which were "highly pertinent to [Appellant's] veracity and credibility." *Id.* 497 Pa. at 36, 438 A.2d at 957. Moreover, because the convictions were recent, "their relevance [was] not attenuated by age." *Id.*

The prior convictions for forgery and theft differed enough from the present charges against Appellant (terroristic threats, recklessly endangering another person, simple assault, robbery, burglary, theft by unlawful taking, receiving stolen goods, conspiracy) to preclude the jury's assumption that the earlier convictions demonstrated the likelihood of Appellant's having committed the acts with which he was currently charged. *See Williams.*

Appellant was an adult self-employed as the owner of a coin shop.

The Commonwealth's case was supported principally by the testimony of the victim-witness, *i.e.*, the Sarni's housekeeper. Appellant was not apprehended in the actual commission of any of the crimes with which he was charged. The cloth bag found in the boiler room of the building in

which Appellant rented space tended to imply Appellant's participation in the Sarni incident but did not directly establish Appellant's guilt. Furthermore, the Commonwealth was unable to secure a unanimous verdict in Appellant's first trial and could logically anticipate difficulty in persuading the jury at the second trial if Appellant intended to testify.

The Commonwealth lacked alternative means for impeaching Appellant's credibility since Appellant had not made prior inconsistent statements on the record and the Commonwealth could not produce any witness other than the victim who could testify about Appellant's presence at, and participation in, the crime. The Commonwealth did not possess other methods of successfully "cross-examining [Appellant] upon his mere denial of guilt." *Henderson* 497 Pa. at 37, 438 A.2d at 957.

Accordingly, the trial court properly permitted the Commonwealth to introduce evidence of Appellant's 1980 convictions for theft and forgery as a means of attacking Appellant's veracity as a witness. For the foregoing reasons we affirm the judgment of sentence of the Court of Common Pleas of Chester County.