Lewis **BUTCHER** et al.

v.

Frank L. **RIZZO** et al.

Civ. A. No. 69–3000.

United States District Court,
E. D. Pennsylvania.

Sept. 8, 1970.

Alan Klein, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiffs.

John M. McNally, Jr., Deputy City Sol., Philadelphia, Pa., for defendants.

## FINDINGS OF FACT, DISCUSSION AND CONCLUSIONS OF LAW AND ORDER

WOOD, District Judge.

The plaintiffs in this case challenge a practice employed on occasion by the defendant police officials of seeking citizens on the street who are not suspected of any crime to participate in lineups. Jurisdiction is grounded on 42 U.S.C. § 1983, and the four named plaintiffs seek both damages and injunctive relief from the aforementioned practice which they contend deprives them of their rights under the Fourth and Fourteenth Amendments. In their complaint plaintiffs also alleged a class action, but we denied that motion without prejudice prior to trial.

On June 24, 1970, we entered an order that pursuant to Rule 65(a) (2) the trial of the action on the merits be advanced and consolidated with the hearing of the application for a preliminary injunction. After trial on July 16 and 17, 1970, and a review of the record, we render the following final Findings of Fact, Discussion and Conclusions of Law.

## FINDINGS OF FACT

1. The plaintiffs in this case are Lewis Butcher, age 20, Lawrence Smith, age 15, Fred Carter, age 19, and Edwin Ballard, age 17. All are residents of the City of Philadelphia.

2. The defendants are the Police Commissioner of the City of Philadelphia and the named officers who are under his command.

3. On the afternoon of September 15, 1969, Chief Inspector Joseph Golden ordered Captain John Clark to arrange for a lineup which was to be held that evening in the Major Crimes Division of the Police Administration Building. The lineup was to include two persons who the police suspected were responsible for various robberies in Philadelphia. Several victims of the robberies were to be present at the lineup. (Stipulation)

4. Captain John Clark thereafter ordered Lieutenant John Dougherty to make certain arrangements for the lineups. (Stipulation) Acting in pursuance of these orders, Lieutenant Dougherty looked for but was unable to find a sufficient number of police personnel or criminal suspects in custody at the Police Administration Building who he deemed suitable for use as "fill-ins" in the lineup. (N.T. 236–244) He thereupon informed Captain Clark of his difficulty in finding a sufficient number of suitable people on the premises at the Police Administration Building to use as "fill-ins". *(Ibid.)*

5. Inspector Edwin Parker was then ordered to have several uniformed officers obtain "fill-ins" off the street for use in the lineup.

6. Officers Richard McHugh and Joseph Kelly were thereupon directed to report to Room 104 of the Police Administration Building. (N.T. 167, 217) They were there given a photograph of the two robbery suspects and directed to obtain persons of a like description off the street to stand in the lineup that evening. (N.T. 167, 217–8)

7. Acting pursuant to these orders, Officers McHugh and Kelly departed from the Police Administration Building and proceeded along Arch Street. On Arch Street between Eighth and Ninth Streets, they observed the plaintitff Butcher who had just emerged from a shoe store. (N.T. 168–73) Officer Kelly, who was driving the van,[1] pulled alongside Butcher and asked him to come along and participate in a lineup. (N.T. 172) Butcher asked how long the lineup would take and Officer Kelly replied that it would not take long.

8. After some further discussion, Butcher walked to the rear of the van, Officer McHugh opened the door, and Butcher got in. (N.T. 172–3) Officers McHugh and Kelly thereupon drove back to the Police Administration Building and took Butcher to Room 104. (N.T. 173)

9. Officers McHugh and Kelly then set out again and proceeded along Ninth Street. At Ninth and Vine Streets they observed the plaintiffs Ballard, Carter, Smith, as well as another youth, Kenneth Freeman. Carter was carrying something in a large paper bag. Officer Kelly, who was still driving the van, pulled over and asked Carter what was in the paper bag. Without comment, Carter gave the bag, which contained a half-gallon bottle of J & B Scotch, to Officer Kelly. Kelly asked Carter his age and Carter said that he was nineteen. (N.T. 173)

10. Officer Kelly then showed the four youths the photograph of the robbery suspects he had been given earlier (N.T. 24–5), and asked them to come along and participate in a lineup. He stated that they would be given food if necessary. (N.T. 175)

11. The four youths then got in the back of the van and Officers McHugh and Kelly escorted them to Room 104 of the Police Administration Building. (Stipulation; N.T. 175–88)

12. None of the youths at that time expressed unwillingness to get into the van or to participate in a lineup. (N.T. 27, 46, 65)

13. When the plaintiffs as well as the other non-uniformed participants in the scheduled lineup were brought into Room 104, it was the duty of Sergeant Charles R. Smith of the Major Crimes Division to record their names, addresses, and physical descriptions. (N.T. 145–6)

14. When Butcher was brought in at approximately 5:30 P.M., Sergeant Smith took the aforementioned information from him in Interview Room Number 3, a small room adjacent to Room 103. The other plaintiffs as well as other non-uniformed participants were processed by a similar procedure. After ordering dinner for those participating in the lineup at approximately 6:15 P.M., Sergeant Smith signed off duty at 7:30 P.M. (N.T. 145–51)

15. Plaintiffs were present in Room 103, Police Administration Building, with occasional trips to the lavatory, etc., until the commencement of a lineup held in a subroom of Room 103 at approximately 8:40 P.M. (Stipulation)

16. Earlier in the day, Officer McDonough had called Vincent Ziccardi, Acting Chief Defender of the Voluntary Defenders and requested that he or his colleagues be present at the lineup to protect the rights of the robbery suspects who were to participate in the lineup. Mr. Ziccardi and Mr. John F. Hassett, also a member of the Voluntary Defenders, attended the lineup. Prior to the actual lineup, Messrs. Ziccardi and Hassett interviewed the eight participants, including the named plaintiffs in this action. However, they took no actions with respect to the plaintiffs as a result of these conversations. (N.T. 105–14)

17. Plaintiffs stood with several other persons including the two robbery

---

1. As we understood the testimony, the van used here is similar to what is sometimes called a "paddy-wagon".

suspects, in a lineup commencing at approximately 8:40 P.M.

18. At the conclusion of the lineup, the plaintiffs and the other participants in the lineup (with, of course, the exception of the two robbery suspects) were paid two dollars apiece by Captain Clark. (Stipulation) At approximately 10:30 P.M. the participants (excepting the robbery suspects) left the Police Administration Building. (N.T. 238)

19. At no time during the afternoon and evening of December 15, 1969, were any of the plaintiffs charged with the commission of any crime.

20. Approximately 1,800 police lineups are held each year at seven different Police and Detective Division headquarters in Philadelphia. (Stipulation; N.T. 121)

21. The Philadelphia Police Department utilizes citizens other than police personnel and criminal suspects to stand as "fill-ins" in a small percentage of police lineups held in Philadelphia each year. (Stipulation; N.T. 122–3; 129)

22. Prior to the commencement of this action, there were no departmental memoranda or directives on the procedure to be followed in soliciting citizen "fill-ins" for police lineups. (N.T. 253)

23. Under the practice of the Philadelphia Police Department prior to the institution of this suit, the responsibility for obtaining consent of non-uniformed "fill-ins" rested upon the uniformed officers who were directed to find persons to participate in such lineups. (N.T. 250) Since the institution of this suit, the Police Department has not discontinued the practice of using "fill-ins" on infrequent occasions, but has altered its procedures in obtaining citizen "fill-ins" in that they are now sought by detectives rather than uniformed patrolmen. (N.T. 250–4)

24. On occasions when non-uniformed citizen "fill-ins" are used in lineups, they do not execute consent forms or any other formal manifestation of assent. (N.T. 124)

25. In the case of "fill-ins" who are minors, consent of a parent or guardian is neither sought nor secured. (N.T. 124–5)

## DISCUSSION AND CONCLUSIONS OF LAW

■ As previously stated, this action is brought pursuant to 42 U.S.C. § 1983. Plaintiffs claim that the practice described in our Findings of Fact and employed by the defendants to obtain citizen "fill-ins" to participate in lineups deprives them and the persons they seek to represent of their rights under the Fourth and Fourteenth Amendments to be secure from arrest and detention by governmental authorities without probable cause for suspicion of criminal conduct. Both parties here agree that if persons are taken from the streets, detained, and placed in lineups against their will and without any charges being brought against them, they have been subject to illegal arrest,[2] and that suit pursuant to § 1983 is proper. The central issue here is therefore whether the procedure employed by the defendants under the circumstances before us in effect acts to deprive or is likely to deprive members of the class plaintiff seeks to represent of their right to choose freely whether or not they desire to be detained for the purpose of participation in a lineup.

■ At the outset, we think it is proper and appropriate to state that we think that it is commendable that police authorities expend great effort to find a number of persons with physical features resembling a person suspected of a serious crime and to place them in a lineup with the accused. In this manner the lineup proceedings in which a

---

2. *Cf.* Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

victim or witness to a crime is asked whether he recognizes anyone whom he can identify as being involved in the crime in question are rendered fairer. *Cf.* Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Since having a number of persons with physical characteristics similar to the accused in a lineup viewed by victims of or witnesses to a crime is extremely desirable as a protection for the rights of the accused and the integrity of our system of criminal justice, we are extremely reluctant to disturb in any way the practice here employed.

■ However, we must be concerned as well for the right of ordinary citizens who are not accused or suspected of any crime and who are asked to give several hours of their time to participate in a lineup, to choose freely whether or not they desire to participate. We presume that most citizens would be ready to participate in such a lineup and thereby aid the working of our system of criminal justice to the extent that their own participation on any given occasion does not interfere with other engagements or with any sensibilities or apprehensions which they might have about riding in a police vehicle or staying in a police station. Nevertheless, for whatever reason, when an ordinary citizen is asked to participate in a lineup, he may for many reasons desire not to participate in a lineup on that occasion and that right must of course be honored. However, when confronted by a police officer in full regalia requesting him to appear in a lineup, the ordinary citizen who probably has not had any prior contact with police may feel that he is in some way obligated to go along. There is a danger that even though the police officer making the request on any given occasion may conclude that by his seeming acquiescence the citizen in question complies without complaint, the citizen does not want to go along but feels that he may be in some sort of trouble if he does not. Since the citizens here involved have not been suspected or accused of any crime, and since they are in effect consenting to detention until the lineup is concluded, we think that here as in the closely related area of consent necessary to validate a search, consent must be "an intentional relinquishment or abandonment of a known right," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and it must be "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion," Simmons v. Bomar, 349 F.2d 365, 366 (6th Cir. 1965). Moreover, such consent must be prompted by more than mere acquiescence in a course of conduct on the part of arresting officers. Porter v. Ashmore, 298 F.Supp. 951 (D.C.S.C.1969).

We have concluded that the rights of citizens of the City of Philadelphia who may be sought as citizen "fill-ins" for lineups cannot be adequately insured under the circumstances unless, at the time they agree to participate they execute a written consent stating that they recognize all of their rights and freely consent to participate. In this way, citizens will be assured of a clear and unequivocal explanation of their rights, and acting police officers will not be given the difficult and unrealistic task under the circumstances of adequately informing ordinary citizens of these important rights. Obtaining such consent forms should not constitute any substantial burden on the police and should for the most part avoid cases such as the one presently before us.

Having reached this conclusion, we turn to the question of relief. At the outset of this case, the plaintiffs sought to represent all citizens of Philadelphia who had allegedly been picked up against their will and required to participate in a lineup. They sought considerable money damages (in the case of the plaintiff Butcher $50,000.00 or

more). At an earlier stage of the case, in accordance with the suggestion of counsel for the plaintiffs we denied without prejudice his request for a class action so that he would have an opportunity for further discovery to find other persons who had allegedly been required to participate in a lineup without consent. At trial (N.T. 101 et seq.) we again denied the motion of the plaintiffs for a class action. Maintenance of a class action as styled by the plaintiffs at that time would have been improper pursuant to Rule 23(b) (2) because they sought substantial money damages and because they had not sustained their burden of proof with respect to the four explicit requirements of Rule 23(a). *Cf.* Notes of the Advisory Committee on the Federal Rules, Federal Rules of Civil Procedure, Rule 23, 28 U.S.C.A. Similarly a class action pursuant to Rule 23(b) (3) was improper because the plaintiffs had not at that time satisfied the requirements of Rule 23(a) (b), or (c).

■ However, being mindful of the provision of Rule 23(c) (1) that an order relating to the maintenance of a class action may be altered or amended at any time, and on the basis of evidence with respect to the procedures for finding citizen "fill-ins" for lineups produced subsequent to our ruling at trial, we will now declare this action to be a class action on behalf of the citizens of Philadelphia maintainable pursuant to Rule 23(b) (2).[3] Further, since for reasons previously considered, we have concluded that injunctive relief is appropriate, we will enter an order enjoining the defendants from conducting lineups in which citizen "fill-ins" participate unless such citizen "fill-ins" execute a written form certifying that they are aware that there are no charges against them, that they have not been arrested and they are under no compulsion whatever to participate in the lineup, that they realize that they are legally free to leave at any time, and that, if they are minors, they have consulted with a parent or guardian and there is no objection from such person to their participation in the lineup.

■ However, for a number of reasons, we will not grant any relief aside from the aforementioned order to the individual plaintiffs before us. First, we do not think that any of the individual plaintiffs has sustained his burden of proof of showing that as a matter of fact, he was compelled to participate in the lineup of December 15, 1969, against his will. Secondly, under the circumstances, we think that only prospective relief is appropriate and that it would be unfair and inequitable to hold any of the defendants here liable for failure to obtain consent forms which they did not at the time know were necessary and which they might well have obtained had they thought them necessary. Thirdly, even assuming that any of the defendants were to be held liable, we think that the plaintiffs implicitly liquidated their damages by accepting money from Captain Clark before leaving the Police Administration Building after the lineup. Moreover, since the plaintiffs produced very little evidence as to damages, any damages awarded would be nominal and as previously stated, the plaintiffs have already received money for their efforts.

## ORDER

And now, this 8th day of September, 1970, for the reasons hereinbefore set

---

3. A class action of this type is especially appropriate in civil rights cases where injunctive or declaratory relief is sought and where the class is one "whose members are incapable of specific enumeration." Notes of Advisory Committee on Rules, *supra*. In the case initially brought by the plaintiff which sought substantial money damages on behalf of the class, it would have been extremely unfair to allow a class action to proceed when the defendants did not know who the plaintiffs seeking damages were. However, in view of our order here, the defendants will not be so prejudiced, since the relief is injunctive and prospective.

forth it is ordered that the constitutional rights of the four named plaintiffs have not been violated, and they are not entitled to monetary or other relief.

It is further ordered that this action is maintained as a class action on behalf of all citizens of Philadelphia.

It is further ordered that the Police Department of the City of Philadelphia, when it is necessary to use "fill-ins", shall follow the procedure which has been outlined in the foregoing opinion.