457 A.2d 931

**COMMONWEALTH of Pennsylvania**

v.

**Robert McKNIGHT, Appellant.**

Superior Court of Pennsylvania.

Argued March 2, 1982.

Filed March 4, 1983.

Marc Alan Krefetz, Philadelphia, for appellant.

Gail Thackery, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, BECK and HOFFMAN, JJ.

BECK, Judge:

On the morning of May 17, 1979, two men, later identified as appellant Robert McKnight and one Clifford Fruster, entered the Jeans Joint on Frankford Avenue, Philadelphia, shortly after the manager James Lomax opened the store for business at 10 AM. McKnight and Fruster shopped for clothing, selecting underwear, two jogging suits, Puma sneakers, a suede jacket, and some sweatshirts, altogether about $200 worth of merchandise. When Lomax added up

the purchases, Fruster pulled out a revolver and ordered Lomax to open the register. Fruster took the $65 in cash which the register contained. While this was going on, McKnight went over to a woman shopper, the only other person in the store, and forced her to lie face down on the floor. The two men then placed Lomax on the floor, tied him up with a belt, and left the store with the cash and the merchandise.

McKnight and Fruster were brought to trial before a judge and a jury in March, 1980, and convicted. McKnight was found guilty of robbery and conspiracy and sentenced to two and one half to five years imprisonment for robbery and a concurrent seven year term of probation for conspiracy. Post-trial motions for a new trial and in arrest of judgment were filed, and this direct appeal followed.

The prosecution's case against McKnight and his co-defendant turned on Lomax's identification of the robbers, and the forms of this identification *inter alia* are now challenged. Appellant McKnight raises two issues. First, he charges that his constitutional right to counsel was violated by two pre-trial identifications at which his counsel was not present. His second claim is ineffective assistance of counsel at trial. He argues that trial counsel failed to preserve, by post-trial motion, a challenge to a ruling of the lower court. This ruling sustained the Commonwealth's objection to the defense's cross-examination of Lomax. In addition, he claims that trial counsel failed to object to the prosecution's closing statement which alluded to a remark made by one of the robbers during the crime. This statement, he contends, suggested that appellant had a criminal record. Since McKnight is represented by new counsel for this appeal, the claim of prior ineffective assistance is properly before this Court. *Com. v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977).

Our review begins with McKnight's challenge to the two pretrial identifications. Lomax first identified McKnight at an uncounselled photographic display on September 13, 1979, at which time McKnight was under arrest and in

custody but not for the Jeans Joint robbery (R. 31).[1] Appellant contends that he was entitled to representation by counsel at the showing of the photos, relying on the authority of *Com. v. Whiting*, 439 Pa. 205, 266 A.2d 738 (1970); cert. denied 400 U.S. 919, 91 S.Ct. 173, 27 L.Ed.2d 159 (1971). *Whiting* stood for the rule that the right to counsel attaches to pretrial photographic identifications of a suspect in custody. Subsequent to *Whiting*, the United States Supreme Court considerably reduced the Sixth Amendment right to counsel at photo displays for identification. In *United States v. Ash*, 413 U.S. 300, 321, 93 S.Ct. 2568, 2579, 37 L.Ed.2d 619 (1973) the Supreme Court ruled, in a review of a case in which photos of the suspect were displayed after indictment: "We hold ... that the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to attempt an identification of the offender....".

■ McKnight contends that his right to counsel at the photo identification, although no longer guaranteed by the Sixth Amendment of the federal constitution, is provided by the constitution of Pennsylvania.[2] In light of the facts in his cases we do not accept his argument. The photo identification in the case at bar occurred when McKnight was in custody for another offense and had not yet become a suspect in the Jeans Joint robbery. We find that McKnight's circumstances are on all fours with those of the defendant in *Com. v. Jackson*, 227 Pa.Super. 1, 323 A.2d

1. In September 1979 McKnight was under arrest and in custody for a robbery of Angie's Bar. He was convicted, and that case is presently being appealed.

2. Article 1, 9 of the Pennsylvania constitution reads:
   Rights of accused in criminal prosecutions
   In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.

799 (1974). In *Jackson*, the suspect was apprehended for a December 1971 burglary. While he was in custody, his photograph was legitimately identified without the presence of counsel, by a victim in a January 1972 burglary. We therefore hold that in Pennsylvania, the right to counsel does not attach when the suspect is in custody for a different offense.[3]

Under these circumstances, i.e. where there has not yet been an arrest for the offense in question, "[S]o long as the display is available for use by the defense, there is no constitutional requirement that the suspect in custody be afforded the right to have counsel present" (*Jackson, supra* 323 A.2d at 804, *Com. v. Lee,* 262 Pa.Super. 280, 396 A.2d 755 (1978), *Com. v. Glover,* 265 Pa.Super. 19, 401 A.2d 779 (1979). In footnote 3 of his opinion, Judge Cercone pointed out that it is reasonable to assume that all persons whose pictures are part of a photo layout are equally suspect, and the requirement of counsel present for each person whose picture is shown would create chaos at the identification.

■ We are bound to follow the standard for pre-arrest photo arrays set out in *Jackson*, in which our Court held that under the circumstances, an uncounselled photo identification is suppressible only when a display procedure is so impermissably suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Applying this standard to McKnight's case, we find that appellant's rights under the Pennsylvania constitution were not violated.

The police officer who showed Lomax photos of McKnight on September 13 did not know whether McKnight was in custody or not. He did know that no arrest had yet been made in the Jeans Joint robbery (Suppression Hearing R. 1.159–60). Two photo displays, each with nine pictures,

**3.** We thus find it unnecessary to reach the question of whether *Whiting* is still the law in Pennsylvania. See Judge Jacobs' concurrence in *Jackson, supra,* which argues that *Whiting* has no application when an uncounselled identification was made while the suspect was in custody for an unrelated offense. For a review of *Whiting's* status, see *Com. v. Diggs,* 260 Pa.Super. 349, 394 A.2d 586 (1979).

were given to the victim (R. 1.156). They were displayed in a portfolio which covered the men's names and addresses but revealed their heads and shoulder areas. The police officer asked Lomax if he could identify one of the men from the robbery from any of the pictures, which Lomax was able to do. There were no suggestive remarks, questions, or instructions. With respect to the challenge of photographic identifications at the suppression hearing, this Court has required that evidence of the display be such "that the defendant would at least be in a position to attack the credibility of the identifying witness testimony." *Jackson, supra,* 323 A.2d at 804. See also *Lee, supra.* This requirement has been met for McKnight. The findings of fact in the instant case made by the suppression hearing court that all the pictures were of "persons reasonably similar, and within permissible range of skin tone, age, nature of hair, in body build and weight, in facial construction" (Suppression Hearing Opinion, p. 30) lead to the conclusion that the display was neither suggestive nor manipulative. Accordingly, we affirm the order of the court which denied McKnight's motion to suppress the photo identification.

■ The second identification which McKnight challenges was made by Lomax at a corporal lineup on October 4, after he and Fruster had become suspects in the Jeans Joint robbery. A pre-trial identification at a corporal lineup is inadmissible at trial when obtained in violation of the accused's right to counsel or when obtained by a procedure that is "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny the accused due process of law. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), *Com. v. Lee, supra,* relying on *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

■ Although McKnight was then a suspect as one of the perpetrators of the Jeans Joint robbery, he did not appear in the line-up as the prime suspect (in this instance Fruster,

who was represented by the public defender), but as a "fill-in" of Fruster's choice. At a later lineup, on October 10, McKnight appeared in the lineup as prime suspect, with a public defender as counsel. In that second lineup (the third identification), which McKnight does not challenge, Fruster appeared as a "fill-in" of McKnight's choice. At both these lineups, Lomax identified both McKnight and Fruster; i.e. he selected the prime suspect and one fill-in.

Standard procedure of the Philadelphia Police Department at the Detention Center is to allow suspects to choose their own fill-ins. They are allowed to select anyone of their fellow prisoners who is willing to appear. Volunteers are paid $.50 per appearance plus one free phone call for their services (Suppressing hearing R. 1.114, 1.33–4). In each instance, the public defender at the lineup represents the prime suspect but not the fill-ins (R. 1.77, 1.89). It is against the policy of the police department to allow two suspects in one lineup (R. 1.113) and the detective in charge on both of the occasions, October 4 and 10, did not know that a fill-in among the men in the line was a suspected co-felon (R. 1.112–113, 1.125, 1.127–8). In fact, there is evidently no practical way for the police in charge of a lineup to know whether fill-ins are suspects or not (R. 1.131, 1.149).

If fill-ins inquire about their rights, they are informed that if they are selected by a victim it would be considered an illegal procedure since they appeared without counsel. If they do not ask a question about their rights as fill-ins, the police say nothing. (R. 134–5).

McKnight's challenge of constitutional violation in Lomax's identification of him while he was a fill-in raises the issue of whether there is an affirmative obligation on the part of the Commonwealth to provide counsel for every person who appears in a lineup. We decline so to find. McKnight argues that *Butcher v. Rizzo*, 317 F.Supp. 899 (E.D.Pa.1970) provides rights to fill-ins that are appropriate to him. We disagree. In *Butcher v. Rizzo*, a civil rights action brought under 42 U.S.C. § 1983, the District Court

enjoined police from conducting lineups in which citizen fill-ins participate, unless the citizen fill-ins execute a written form attesting that they are aware that there are no charges against them, that they are not under arrest, that they are under no compulsion to appear, and that they are free to leave at any time. If the prospective fill-in is a minor, parental consent must be obtained. The police in *Butcher v. Rizzo* had used fill-ins drawn from citizens off the street, paying them $2 per hour, because no one of suitable appearance had been found in custody at the Police Administration Building in Philadelphia. The court in *Rizzo* commended the police effort to find fill-ins of like physical characteristics, so that line-ups would be as fair as possible, and at the same time expressed concern about the rights of citizens who were being asked to give up their time for this purpose.

We do not believe that the rule in *Rizzo* applies to individuals in the prison population who voluntarily subject themselves to lineups in which they know they may be identified as a co-defendant of the prime suspect. The police warning to fill-ins that they are protected from identification because they are unrepresented by counsel cannot be used by co-suspects in a crime to manipulate procedures and to insulate themselves from valid identifications. We agree with the findings of the court in the suppression hearing that the police running the line-ups in the Jeans Joint identifications did not know that co-suspects were twice in the lineups, and we affirm the order denying the motion to suppress McKnight's identification by Lomax on October 4.

■ We also note that even if either or both of the contested identifications were constitutionally tainted, which we have declined to find, Lomax's in-court identification of both McKnight and Fruster purged the taint. In *Com. v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978) our Supreme Court held that an in-court identification following an illegal out of court identification is admissible into evi-

dence if the in-court identification meets the following criteria of reliability:

"(1) the manner in which the pretrial identification was conducted; (2) the witness' prior opportunity to observe the alleged criminal act; (3) the existence of any discrepancies between the defendant's actual description and any description given by the witness before the photographic identification; (4) any previous identification by the witness of some other person; (5) any previous identification of the defendant himself; (6) failure to identify the defendant on a prior occasion; and (7) the lapse of time between the alleged act and the out-of-court identification." [4]

Lomax had the opportunity to observe McKnight at close range for about twenty minutes, in mid-morning, in a well-lighted store. The time of his observance was spent helping the men choose clothing, before the onset of the stress of being held up at gunpoint. Lomax never mis-identified another person for either McKnight or Fruster, and he never failed to identify either of the men at the photo display or the lineups. We affirm the trial court's holding that the Commonwealth proved by clear and convincing evidence, as is their burden, that the totality of circumstances affecting Lomax's identification of McKnight is decisively established, and his in-court identification constitutionally valid.

We turn now to McKnight's claim of ineffective assistance of counsel. The first assertion is trial counsel's

4. The United States Supreme Court has set out the following factors to consider in determining whether an in-court identification is independent:

the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to line-up of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification.

*United States v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1165 (1967).

failure to preserve in post-trial motion an objection to the lower court's sustaining of the Commonwealth's objection to the defense's cross-examination of Lomax. Trial counsel read into the record a description of McKnight given by Lomax which failed to indicate a scar on McKnight's face (R. 121–4). The jury was given an opportunity to observe McKnight at close range, to see that he did have a scar. In fact, Lomax's description did not say McKnight had no scar, only that he did not know whether McKnight had a scar or facial hair. During the cross-examination, the district attorney correctly objected to a question by defense counsel which asked Lomax to speculate on what he might have seen (R. 121), a question which was properly stricken by the court below. Any discrepancy between Lomax's description of McKnight and his courtroom appearance went to the weight of the identification, not its admissibility. We believe that in this instance there was nothing to preserve in a post-trial motion. The claim of ineffectiveness fails when counsel does not perform a fruitless act. *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967); *Com. v. Hubbard, supra.*

■ McKnight's second claim of ineffectiveness of counsel is a charge that trial counsel failed to object to a part of the district attorney's closing argument which, he claims, suggested that he had a prior criminal conviction. Lomax testified that when the two men came into the Jeans Joint, posing as customers, one of them said "that they had just gotten out of the joint and they wanted some clothes." (R. 75–7). Defense counsel objected to the testimony and the court ruled, we hold correctly, that Lomax was entitled to describe what had happened at the robbery, since the statement was not offered as truth, to prove that the men had indeed just left prison. The district attorney later alluded to this remark in his closing statement. Because Lomax's description of what happened was properly admitted as testimony (the remark not having been offered to prove prior criminal activity), and since McKnight denied that he was ever in the Jeans Joint, McKnight cannot properly

claim prejudice by the statement. Once the court admitted the remark over defense counsel's objection the point was preserved for appeal. In fact, the claim was addressed in the court's initial opinion (p. 8) and in the supplemental opinion (p. 4), both passages evidently overlooked by McKnight's replacement counsel. The last claim therefore also fails.

In conclusion, we hold that the pre-trial identifications of McKnight were valid, the in-court identification was not tainted, and that McKnight was effectively represented by counsel at trial.

Judgment of sentence affirmed.

WIEAND, J., concurs in the result.