## Commonwealth v. Bellamy

C.P. of Bucks County, no. 4654-2007.

*Karen A. Diaz,* for Commonwealth.
*Michael J. Lacson, public defender,* for defendant.

RUFE, *J.,* July 3, 2008—Defendant, Stan Bellamy, has filed an appeal in this matter. Of the seven matters

raised in the statement of matters complained of on appeal, two of them pertain to matters addressed before this court during a suppression hearing conducted on September 10-11, 2007.[1]

Prior to our ruling, we made the following findings of fact:

On February 8, 2007, approximately 7:25 p.m., Chang Soo Kyung, a businessman and operator of the Coronet Cleaners in the Township of Falls, Bucks County Pennsylvania, had closed his business and was proceeding to the parking lot adjacent to his building to leave for the day. Although his shop was not lighted and there were other businesses that were likewise closed in the area, his parking lot had an overhead light that lighted the parking lot sufficiently for Chang Kyung to be able to see persons coming and going.

As he approached his vehicle, he was confronted and assaulted by an individual, whom he had identified as a black male with a hoodie, a hood over his head, who struck him on the right side of his face and made an effort to seize from Mr. Kyung his car keys. My. Kyung resisted and the assaulter struck him a second time in the face knocking him to the ground. At that time Mr. Kyung surrendered his keys to the attacker, who kicked him in the ribs on the left side, entered the vehicle and drove off.

On February 28, 2007, Mr. Kyung was visited by detectives of the Falls Township Police Department, who

---

1. One matter in the statement of matters complained of on appeal pertains to a defense petition for a line-up, conducted on June 1, 2007, before the Honorable Albert J. Cepparulo of this court. The remaining issues are relevant to the subsequent jury trial and sentencing, before the Honorable David W. Heckler, also of this court.

submitted to him a photo array containing the pictures of six black men, advising him by means of a written disclaimer that he need not identify anybody; and that if he was not sure, that he should not identify any person on the array. Mr. Kyung examined the photos and systematically eliminated the persons identified as photo numbers 6, 5, and 4 on the bottom of the row, and eliminated number 1 by proceeding clockwise from number 6.

Officer Bryan White interrogated the victim, Mr. Kyung, on February 8 at the scene of the assault and obtained a description and assessed the visibility of the parking lot. Officer White obtained a description that the attacker was a black male with thin build and a small amount of facial hair.

Detective Martial Belinsky identified himself as the partner to Detective Corporal John Martin, also of Falls Township Police Department, and that he was familiar with the circumstances of the assault on Mr. Kyung, and as of February 23 there were no leads.

On February 23, 2007, Detective Belinsky received a report of a car parked in the Pennsbury Court Apartments parking lot which matched the description of the vehicle taken from Mr. Kyung on February 8. The vehicle was identified as a 2006 Chrysler Pacifica van, silver in color.

Detective Belinsky reported to the Pennsbury Court Apartments in an unmarked car in plain clothes sometime before 3 p.m. on February 23 and began a surveillance of the vehicle. At approximately 4 p.m. a black male wearing a black coat exited the apartment building, proceeded past the vehicle, and then returned to the vehicle and entered it and drove off.

Detective Belinsky was alerted by Nextel Officer Krotz of the Falls Township Police Department and engaged in pursuit of the vehicle. Officer Krotz, likewise, pursued the vehicle. Detective Belinsky identified the route followed by the vehicle in which he was in pursuit and testified that in a certain area within the Borough of Morrisville he lost visual contact with the vehicle. He continued driving around the streets of Morrisville Borough and located the vehicle abandoned on Lynns Court. He relayed his findings to the network on which the Falls Township and Morrisville Borough police radio was attuned.

Officer Eric Tomko of the Morrisville Borough Police was off duty on the day in question, but was in the police station of Morrisville Borough. He heard the transmissions of the police radio in Morrisville Borough headquarters and proceeded out of uniform in his own personal vehicle armed with his service revolver and police radio to the vicinity adjacent to the Lynns Road or Lynns sections of Morrisville Borough as the case may be.

Officer Tomko testified credibly that he proceeded to that adjacent area on suspicion it was a logical direction for the trespasser to proceed if the trespasser were fleeing the vehicle which had been abandoned on Lynns Court as broadcast by Detective Belinsky. Officer Tomko testified that he observed a black male carrying a backpack climb over a fence and enter into the backyard of a property on Doloro Street in the Borough of Morrisville. He observed the individual approach the door to the house, and he approached the individual and directed him to cease any further movements.

By Officer Tomko's actions he effectively placed the defendant under arrest. The defendant was charged with

receiving stolen property, fleeing and eluding police officers, and two summary offenses in the operation of the vehicle. Those charges were filed on February 23, 2007.

Corporal John Martin of the Falls Township Police Department, to whom the assault case was originally assigned, compiled a photo array using resources made available wherein all of the persons included in the photo array were black males with a certain portion of facial hair and medium build. The photo array, once compiled, was placed on a single sheet and was exhibited to the victim at his place of business, Coronet Cleaners.

The victim, Mr. Kyung, made a positive identification of the defendant by systematically eliminating four of the defendants, pointing to each one individually and saying not him as to each of the four defendants that he eliminated. Upon coming to the defendant's photo in the array, the fifth person to whom Mr. Kyung devoted his attention, he identified him and said him.

The photo array was conducted on February 28, notwithstanding that the criminal charges for receiving stolen property, fleeing and eluding, and the summary offenses had been filed on February 23 by Officer Krotz and the public defender had entered an appearance for the defendant in connection with those February 23 charges. The entry of appearance was made effective on February 26 when the public defender appeared before Judge Heckler of this court seeking a bail reduction. It is noted that the reduction was approved to $40,000, 10 percent.

As a result of the positive identification of the defendant, the criminal charges lodged on February 23, 2007,

were withdrawn and new charges were filed incorporating the charges which had been filed on February 23 and new charges of robbery.

The matters raised are as follows:

"(2) Appellant believes and therefore avers that the court erred in denying a defense motion to suppress where, at the time of the stop, the officer lacked reasonable suspicion or probable cause in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the enhanced protections under Article I, Section, 8 of the Pennsylvania Constitution.

"(3) Appellant believes and therefore avers that the court erred in denying a defense motion to suppress the photo line-up and subsequent in-court identification in violation of the Sixth Amendment to the United States Constitution and under Article I, Section 9 of the Pennsylvania Constitution."

We will first address the suggestion that the court erred in denying the motion to suppress as to whether Officer Tomko had probable cause to stop defendant.

The crucial test in determining the presence of probable cause is whether the facts and circumstances known to the police would warrant a person of reasonable caution in believing the suspect has committed or is committing a crime. *Commonwealth v. Blassingale,* 398 Pa. Super. 379, 393, 581 A.2d 183, 189 (1990) citing *Commonwealth v. Bartlett,* 486 Pa. 396, 406 A.2d 340 (1979).

The evidence discloses that Officer Tomko, from listening to police broadcasts, was aware that an individual operating the Chrysler Pacifica was the subject of a police pursuit. We found that Officer Tomko heard a

series of police transmissions, and that subsequently he observed defendant fleeing from the vicinity where the Pacifica had been abandoned. We also found that Officer Belinsky arrived on the scene and positively identified defendant as the person he saw leave the Pennsbury Court Apartments and enter the Pacifica. This combination of information constituted sufficient probable cause to place defendant under arrest. Officer Tomko testified the distance from where the vehicle was abandoned and the address where he saw the defendant climb over the fence is 100 yards, 150 yards approximately. (N.T. 9/10/07, p. 109:17.) In contrast we did not find defendant credible in his testimony that he did not climb over a fence but was standing in the driveway talking, having just closed the door of the house at 538 Doloro, where friends of his live. (N.T. 9/10/87, pp. 149-50.)

We also noted the importance of the fact that during the course of cruising and searching for the vehicle, Officer Belinsky testified that he was specifically on the lookout for a pedestrian, and no other pedestrians were observed in the area of the Pennsbury Court Apartments and Morrisville Borough. (N.T. 9/10/07, p. 72:18-25.)

It is the prerogative of the fact-finder to believe all, part, or none of the evidence presented. *Commonwealth v. Lyons,* 382 Pa. Super. 438, 555 A.2d 920 (1989). We found the evidence presented sufficient to establish probable cause and justify Officer Tomko's stop of defendant based on the police broadcasts, coupled with Officer Belinksy's further identification of defendant as the individual seen earlier getting into the vehicle. Defendant's assertion that probable cause did not exist for the stop and arrest is without merit.

Appellant further contends that this court erred in denying the suppression of the photo line-up and subsequent in-court identification. Based on counsel's argument at the hearing, the issues raised here are that defendant was represented by counsel as of February 26, 2007, and therefore, the photo identification, which occurred on February 28, 2007, without defense counsel present violated defendant's right to counsel; and furthermore, that there was no independent basis for the in-court identification aside from the photo array. Defendant points to the victim being assaulted by an unknown perpetrator, it being dark outside, victim's glasses becoming crooked on his face after being punched, and victim's description to police being vague as to assailant's physical frame, distinguishing facial characteristics, or facial hair. (N.T. 9/10/07, pp. 158-59.) And, thus the in-court identification based on the photo array, alleged to be in violation of defendant's rights, should likewise have been suppressed.

With regard to the suggestiveness of an identification procedure, the Pennsylvania Superior Court has consistently held that only if the totality of circumstances shows that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification will the evidence be suppressed. *Blassingale, supra.* (citations omitted)

At the hearing we found as follows:

"As to the photo array, we find that Mr. Kyung was not the subject of an unduly suggestive identification. In the first instance, we note that the array was of six individuals. All six were of black males. None of the six were exposed to a particular suggestion that the individual was a pris-

oner or was in custody. All six had small elements of facial hair, including either a thin mustache or a goatee.

"We note that the victim was made aware that he did not have to identify anyone, and we refer to the photographic line-up procedure reviewed with the victim prior to the examination of the photos. We find the photo array in itself to be non-prejudicial." (N.T. 9/11/07, pp. 10-11.)

Although Appellant presented testimony of a pock mark on his nose and a scar above each eye (N.T. 9/10/07, p. 144), based on both the court's own consideration of appellant's appearance (N.T. 9/10/07, p. 152), as well as the precedential law in this area, even if the other photographs in the array did not include the exact facial markings, that would not establish suggestiveness in the array.[2] We found appellant's reference to these markings unpersuasive.

Appellant further asserts that he was improperly denied the right to have counsel present when the photographic array was viewed by the victim. In Pennsylvania, the right to counsel does not attach when the suspect is in custody for a different offense than that for which the array has been compiled. *Commonwealth v. McKnight,* 311 Pa. Super. 370, 457 A.2d 931 (1983).

In the instant case, as in *Blassingale,* when the victim of the instant case was shown the photo array, appellant was in custody on separate charges, thus, there was no right to counsel. Similarly, we found here:

2. In *Blassingale, supra,* appellant possessed a glass eye, and the other individuals in the array did not. The fact that there were other individuals in the array with unusual eye characteristics was found sufficient to eliminate any suggestiveness in the array.

"As the right of counsel of the defendant to be present before a photo array is exhibited, that right is acknowledged. However, on February 28, 2007, when a photo array was exhibited to the victim, the defendant had been charged with receiving stolen property, fleeing and eluding police officers, none of which were the subject of the investigation of the robbery; and therefore, the public defender was not and could not be representing the defendant as to the robbery charges. The defendant's rights, therefore, were not violated as he had not been charged with the offense then being investigated.

"Further, we would say that even if the charges were blended, that the exhibition of the photo array by the Falls Township Police Department to the victim, Mr. Kyung, was non-prejudicial, was inadvertent, and not a knowing and intentional violation of the defendant's rights; and therefore, was a harmless error." (N.T. 9/11/07, p. 12.)

We do not find the photo identification to have been suggestive, manipulative or tainted in any way, thus we disagree with counsel's argument that any subsequent in-court identification would follow as also violative of defendant's rights. (N.T. 9/10/07, p. 158.)

The factors considered in determining whether a victim had an independent basis for an in-court identification include, "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Commonwealth v. Sanders,* 380 Pa. Super. 78, 91, 551 A.2d 239,

245 (1988). (citations omitted) This court was convinced of victim's independent, in-court identification.

"The victim's identification of the defendant in open court was positive and assertive and is likewise, admissible at trial. We note, in particular, that Mr. Kyung identified the defendant in open court and in doing so took the unusual and unique step of standing up and pointing at the defendant upon identifying him. His identification was neither halting or uncertain in anywise (sic)." (N.T. 9/11/07, pp.12-13.)

At the conclusion of the suppression hearing we determined the arrest of the defendant by Officer Tomko was based on probable cause, that the photo array was not suggestive in any way, and that defendant's rights to counsel were not violated by the conduct of the array on February 28, 2007. Therefore, we denied the motions to suppress, before this court, in the instant matter.